IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>TADDY JACKMAN,<br><br>　　　　　Defendant. | **REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS**<br><br>Case No: 2:05-CR-228 PGC<br>District Judge Paul G. Cassell<br><br>Magistrate Judge David Nuffer |

　　　　This case was referred to the undersigned under 28 U.S.C. §636(b)(1)(B). The undersigned was directed to manage the case, receive all motions, hear oral arguments, conduct evidentiary hearings as deemed appropriate and submit to the District Judge a report and recommendation for the proper resolution of dispositive matters presented.

**Issues Presented on Motion to Suppress**

　　　　Defendant Jackman moved to suppress the statements made during his interview with police investigators after his arrest on August 7, 2003. The original basis of his motion was that the questioning occurred after a two week period "avoiding police. He did not sleep during this two week time period, save for about three hours when he passed out from sheer exhaustion, and he was using cocaine and crystal daily during this time."[1] "Mr. Jackman's mental capacity was clouded by his drug use and fatigue, and thus his decisions to waive his Miranda rights and to

---

[1] Memorandum in Support of Motion to Suppress at 2, docket no. 18, filed May 13, 2005.

make statements were not the 'product of a rational intellect and a free will.'"[2]

Jackman submitted a Forensic Neuropsychological Evaluation in support of his motion to suppress. The Evaluation argued that Defendant was not capable of knowingly and voluntarily waiving his *Miranda* rights prior to interrogation. In response, the Government filed a motion for an independent forensic examination of Defendant. The magistrate judge believed that expert opinion evidence would not be helpful[3] in determining the facts relating to Defendant's waiver of his *Miranda* rights and denied the motion for an independent forensic examination.

Jackman's condition is evident from the video / audio recording of the interview. He is conversant and coherent, though tired. The magistrate judge did not consider the evaluation submitted by Jackman in deciding this motion.

A video / audio recording was made of the interrogation which took place at the police station, in the presence of two officers. After some brief video recorded conversation between Jackman and one officer, a second officer enters the room. Then, this exchange occurs:

> Officer 2: Are you all set up?
>
> Officer 1: Yeah.
>
> Officer 1: So, OK, yeah, like, like I told you in the car I just – I want to make sure I get everything, understand everything that's going on and hopefully, with you talking, the way you're helping, you been helping yourself, you're helping me, and hopefully, we can help you. You know, cause I don't want, like I said, I don't want to see you do any time [unintelligible].
>
> Jackman: [Unintelligible] It's like I've been thinking, you've done so much wrong.

---

[2]*Id.* at 7 (citing *Mincey v. Arizona,* 437 U.S. 385, 398 (1978)).

[3]*See* Fed. R. Evid. 702.

| | |
|---|---|
| Officer 1: | Oh, yeah, but that's in the past, everybody's got a past. So, before we get too far into it, though, a couple of formalities, um, since obviously, you're not free to leave after we read you your rights. [Pulls card from pocket.] All right. So, you know you have the right to remain silent, right? |
| Jackman: | [Nods.] |
| Officer 1: | You know that anything you -- can -- say can and will be used against you in court? |
| Jackman: | Yes. |
| Officer 1: | Yeah. You understand you have the right to talk to a lawyer and have him present with you while you are being questioned? |
| Jackman: | Yes. |
| Officer 1: | If you can't afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish? You understand all that? |
| Jackman: | Yes. |
| Officer 1: | OK. [Puts card back in pocket.] You have any questions about it at all? |
| Jackman: | No sir. |
| Officer 1: | Good deal. So, since my partner wasn't there, can you kind of give me a quick run down again on what happened – so you were at the fireworks with all these guys, right? Initially? |
| Jackman: | We'd been hanging out for two days, man. |
| Officer 1: | And you'd been staying with Jerry? |
| Jackman: | Jerry's my cousin. [balance not transcribed.][4] |

From the foregoing exchange, it is apparent that:

a. Jackman and Officer 1 had a prior conversation;

b. Jackman was told that the function of the advice of rights was to prevent him from leaving and that the warning is a formality.

---

[4] This transcription was made by the court from the video / audio recording, and provided to counsel with the invitation to make any corrections. None were submitted.

      c.      A sufficient *Miranda* warning was read from a card.

      d.      Officer 1 paused after each portion of the warning to ask Jackman if he understood.

      e.      At each pause, Jackman indicated that he understood the right just recited.

      f.      After Officer 1finished the warnings, he asked Jackman if he had any questions.

      g.      Defendant stated that he did not have any questions.

      h.      Officer 1 then asked Jackman to recount what Jackman had told him earlier, for the benefit of Officer 2, who was not present at the earlier recounting.

      i.      Neither officer asked Jackman if he wanted to talk with the officer, or if he waived his right against self-incrimination or his right to assistance of counsel.

      j.      Jackman proceeded to speak, at length, with the officers and wrote some information on a notepad.

## Discussion

When *Miranda v. Arizona*,[5] announced the requirement that defendants be advised of their right against self incrimination and to assistance of counsel, the standard for waiver was very demanding. An "effective waiver of the right to counsel during interrogation" was required to be "specifically made after the warnings."[6] The court stated that "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."[7]

---

[5]384 U.S. 436 (1966).

[6]*Id*. at 470

[7]*Id*. at 475.

The court almost rejected the concept of an implied waiver when it said "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained."[8]  The court also required that the warning and waiver be evaluated in context.

> [A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege. The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation.[9]

Of course, this standard was relaxed somewhat in *North Carolina v. Butler*[10] when the Supreme Court held that a defendant might be found to have waived his rights after valid warning, even though he refused to sign a waiver form.  The defendant said, "I will talk to you but I am not signing any form."[11]  In spite of the fact that this statement said nothing about the right to counsel, the Supreme Court held that a "defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver"[12] could validly show waiver.  The Court held, consistent with ten of eleven circuits and seventeen states, that "an explicit statement of waiver is not invariably necessary."[13]

---

[8]*Id*.

[9]*Id*. at 476.

[10]441 U.S. 369 (1979).

[11]*Id*. at 371.

[12]*Id*. at 373.

[13]*Id*. at 375-376

One case from this district has confronted nearly identical facts to hold that a defendant who understood his rights under *Miranda* and chose to answer questions, effectively waived his rights even though he was not specifically asked if he wanted to make a waiver.[14]  Therefore, there is no requirement that an explicit choice be put before a defendant.

## CONCLUSION AND RECOMMENDATION

The warning given to Jackman was adequate, and he understood his rights against self incrimination and to effective assistance of counsel.  Though he was not expressly asked if he wanted to waive those rights, his response to further questions is sufficient, under the current case law, as a voluntary relinquishment of his rights.

The magistrate judge recommends the motion to suppress be DENIED.[15]

## Notice to Parties

Within 10 days after being served with a copy of this recommended disposition, a party may serve and file specific, written objections.[16]  Failure to file objections may constitute a waiver of those objections on subsequent appellate review.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  The rules provide that the district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which

---

[14]*United States v. Moreno-Vallejo,* No. 2:00 CR 485 DAK, 2001 WL 741247 (D. Utah Mar. 13, 2001)(unpublished).

[15]Docket no. 17, filed May 13, 2005.

[16]See 28 U.S.C. § 636(b)(1)(B).

specific written objection has been made in accordance with this rule.  The district judge may accept, reject or modify the recommended decision, receive further evidence, or re-commit the matter to the magistrate judge with instructions.

It is recommended that any order of the district judge regarding this Report and Recommendation should exclude from the computation of the Speedy Trial Act, the time from the filing of the Motion to Suppress through the date of entry of the order of the district judge.[17]

October 17, 2005.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge

---

[17] See 18 U.S.C. § 3161(h)(1)(F) and (J).